I conclude that the worker was engaged in farm labor at the time of her injury, and, therefore, that she is exempt from coverage under the Workers' Compensation Act, pursuant to Ala. Code 1975, § 25-5-50(a), which states in pertinent part:
 "This article and Article 2 of this chapter shall not be construed or held to apply to . . . an employer of a farm laborer."
As Judge Monroe states, this court has stated:
 "[T]he exemption of farm labor from [workers'] compensation coverage is construed according to the character of the work regularly performed by the employee, not according to the nature of the [company's] business."
Patrick v. Miller, 440 So.2d 1096, 1097 (Ala.Civ.App. 1983).
This court has specifically held that a worker employed as a "general farm laborer" at a commercial dairy is a farm laborer and thus is not covered by the Workers' Compensation Act.Buchanan v. Pankey, 531 So.2d 1225 (Ala.Civ.App. 1988). This court has also held that a worker employed to repair fences, clean stables, and feed livestock was a farm laborer and thus would not be included as an "employee" for the purpose of determining whether the employer had enough employees to be covered by the Act. Early v. Dunn, 615 So.2d 1209 (Ala.Civ.App. 1992).
This worker was injured the first day of her employment with the company. She described her work duties as follows:
 "A. Well, I went to the field to gather trees, 25 to the bunch; packaged *Page 250 
them together, inserted them in a bag and the men loaded them on the truck. And —
"Q. Then what else were you required to do?
 "A. Well, we went in and they have spray nozzles that they fertilize the plants, and then the bags are lifted over to a conveyor belt. And the conveyor belt puts a metal band on it and then they are packed in bigger packages to be shipped."
James Morrison, the company's principal, testified that the worker was hired to "harvest pine and hardwood nursery stock out of [a] nursery." The company had been the successful bidder on a state contract to harvest the trees from a state-owned pine and hardwood nursery. Mr. Morrison also testified that the company has workers' compensation coverage.
Alabama courts have not addressed the issue whether duties such as those performed by this worker, harvesting and preparing trees at a pine and hardwood nursery, are farm-labor activities as contemplated by § 25-5-50.
 "The Alabama legislature adopted Minnesota's compensation law and the Minnesota court's interpretation of such law in 1919. Pow v. Southern [Constr.] Co., 235 Ala. 580, 180 So. 288 (1938). Today, Minnesota's construction of its workmen's compensation law serves as a source of persuasive value in those cases where Alabama law offers no guidance. Eley v. Brunner-Lay Southern Corp., 289 Ala. 120, 266 So.2d 276
(1972)."
Buchanan, 531 So.2d at 1226. However, my research discloses that Minnesota has not addressed this precise issue, either.
The trial court's order addressed the issue whether the worker is a farm laborer exempt from the Workers' Compensation Act:
 "The [company] did not operate a farm but instead was a successful bidder on a state contract to process seedlings. Because this precise question appears to have never been addressed in Alabama, the Court has looked to Minnesota Law, the source of our [workers' compensation] law, for persuasive authority on workers' compensation issues not yet addressed by our Courts. . . . `To be considered a farm laborer, an individual must perform chores typically considered part of operating a farm and must perform those chores on a farm.' Wurst v. Friendsuh, 517 N.W.2d 53, 56 (Minn.App. 1994). The Minnesota Courts have stated: `Although it is the policy of the legislature to exempt farm labor from the Workers' Compensation Act, we should not extend that policy by such a broad interpretation of the term as to include independent and separate commercial enterprises clearly not intended to be included within the meaning of "farm labor."' Tucker v. Newman, 217 Minn. 473, 481-82, 14 N.W.2d 767, 772 (1944). The Court concludes that the [worker] was engaged in work within the forestry industry, that the [company] was not operating a farm but instead was engaged in a commercial enterprise which the Court believes our legislature did not intend to be included in their definition of a farm."
In its order, the trial court cited two Minnesota cases. In Tucker v. Newman, 217 Minn. 473, 14 N.W.2d 767 (1944), the Minnesota Supreme Court held that a worker employed to feed and care for foxes and minks that were raised on a farm for commercial sale was not a farm laborer. The employer operated a large traditional farm, raising crops and traditional livestock, such as horses, cattle, and sheep. The court held that "[w]ork may be farm labor if associated with farm activity, but if carried on as a commercial enterprise it is subject to the Workmen's Compensation Act." 217 Minn. at 478, 14 N.W.2d at 770. The court ruled that the fox and mink operation was a "substantial, commercial enterprise, separate and distinct from the farming activity." Id. *Page 251 
The court also cited Wurst v. Friendshuh, 517 N.W.2d 53
(Minn.App. 1994). The court held in that case that a worker who milked dairy cows and performed related chores at a dairy farm was not exempt as a farm laborer, because the farm for which she worked had paid more than $8,000 to farm laborers for services rendered in the preceding year. Minn. Stat. § 176.021, subd. 11a. (1990), provides that farm laborers who work for farms that pay more than $8,000 a year to farm laborers are covered by the Minnesota Workers' Compensation Act.
The company cites two Tennessee cases for its argument that harvesting trees is farm labor. In Ginn v. Forest NurseryCo., 165 Tenn. 9, 15, 52 S.W.2d 141, 142 (1932), the court described the worker's duties as "[tilling] the soil, [tending] growing plants, shrubs, and young trees, [preparing] them for market, and [delivering] them to a shipping point." The court concluded that such work was farm labor and that the worker was excluded from workers' compensation coverage. In Dills v.Tennessee Nursery Co., 188 Tenn. 241, 243, 218 S.W.2d 992, 993
(1949), the court described the worker's duties:
 "[H]e planted trees during the growing season, `dug them up,' `cultivated between the rows' and `planted seed, layed off the rows and cultivated them.' Also, `he dug and baled and got stuff ready for shipment and hauled to the freight office,' and did just `anything that needed to be done.'"
I agree with the company that the work duties described in Ginn
and Dills are almost identical to the worker's job duties in the present case.
As stated above, Minnesota law has not addressed the issue whether a worker employed to harvest trees from a pine and hardwood nursery is a farm laborer. The trial court relied onTucker and Wurst for the proposition that "commercial enterprises" distinct from farming operations are not exempt from the Minnesota Workers' Compensation Act. The trial court concluded that the company's pine and hardwood harvesting operation is also a "commercial enterprise" that is not a traditional farming operation.
As this court stated in that portion of Patrick v.Miller quoted above, "the exemption of farm labor from [workers'] compensation coverage is construed according to the character of the work regularly performed by the employee, not according to the nature of the employer's business." I conclude that in this present case it is inappropriate to rely on the Minnesota cases because the trial court's reliance on those cases emphasized the company's business operations rather than the worker's job duties, in determining whether the worker was a farm laborer. Also, the holding in Wurst was based on the $8,000 statutory exemption of § 176.021, subd. 11a. Section 25-5-50 has no monetary exemption. Furthermore, Wurst involved a worker on a dairy farm, and, as stated above, this court has already held in Buchanan that a worker employed by a commercial dairy is a farm laborer exempt from our Workers' Compensation Act.
Other Alabama statutes contemplate that the work performed in harvesting trees is to be considered an agricultural activity. Ala. Const. 1901, Amend. 373, provides that agricultural property and forest property have the same ad valorem taxation classification. Ala. Code 1975, § 2-10-50(1), includes forestry products in the definition of "agricultural products," and § 2-10-50(5) includes production of forestry products in the definition of "production of agricultural products."
Therefore, relying on the Tennessee cases of Ginn andDills, as well as Alabama law defining agricultural terms and interpreting the term "farm labor," I conclude that the worker in this present case was, as a matter of law, at the time of her injury, a "farm laborer" within the meaning of § 25-5-50 and that she is therefore *Page 252 
exempt from the coverage of the Workers' Compensation Act.
Although Alabama law requires me to conclude that the worker was engaged in farm labor at the time of her injury, I question the wisdom of the farm-labor exemption. Professor Larson states:
 "Many reasons, of varying degrees of validity, have been given to explain the agricultural exemption. The only one which seems to have much substance is the practical administrative difficulty that would be encountered by hundreds of thousands of small farmers in handling the necessary records, insurance, and accounting. If this is the reason, it ought to follow that the exemption should be confined to small farmers and not at the same time relieve from compensation responsibility the great fruit, truck, sugarcane, dairy, and wheat farms which have much more in common with industry than with old-fashioned dirt farming. With the exception mentioned, based on minimum number of employees or the hazardous or mechanical nature of the employment, this all-important distinction has been largely disregarded in the statutes.
 "Less convincing is the argument that the farmer cannot, like the manufacturer, add his compensation cost to the price of his product and pass it on to the consumer. This might be true if an isolated state attempted compulsory coverage, but if all states extended coverage to farm labor, there would be no competitive disadvantage so far as the domestic market is concerned. As to the disparity between the domestic and world market, that problem already exists, and will not become essentially different because of a slight change in one domestic agricultural cost factor.
 "Least convincing of all is the assertion that farm laborers do not need this kind of protection. Whatever the compensation acts may say, agriculture is one of the most hazardous of all occupations. In 1964, of 4,761,000 agricultural workers, 3,000 were fatally injured, while of 17,259,000 manufacturing employees, the number of fatalities was 2,000.
 "It is important to ask what valid reason lies behind the exemption in order to have some guide in construing the notoriously troublesome terms `farm' and `agriculture.' If, as is here suggested, that reason is one of administrative difficulty, one might expect to find that where the difficulty does not exist, due to the virtual industrialization of the agricultural activity, close questions of definition will be resolved in the direction of compensation coverage."
Arthur Larson and Lex Larson, Larson's Workers' Compensation Law § 53.20 (1997) (footnote omitted). The continued validity of the farm-labor exemption is an issue for the legislature.